PRINCE *v.* NEW YORK CENT. & H. R. R. CO.

*(Supreme Court, General Term, Fifth Department. June 2, 1891.)*

1. RAILROAD COMPANIES—DEFECTIVE CROSSINGS.
    Where it appears, in an action against a railroad company for injuries caused by the defective condition of a farm crossing, that defendant had maintained the crossing for 49 years, and there is no evidence justifying its discontinuance, defendant cannot contend, in order to escape liability for such injuries, that it was not obliged to maintain the crossing.

2. SAME—NOTICE OF DEFECTS.
    Where a plank is torn up from a farm crossing on a railroad by the wreck of a passenger train, and the crossing remains in such condition for more than six months, the company will be charged with knowledge that the spikes which secured the plank were left in a dangerous condition.

Appeal from Monroe county court.

Action by William Prince against the New York Central & Hudson River Railroad Company. From a judgment entered on a verdict of $175 for plaintiff, and from an order denying defendant's motion for a new trial in a case appealed from a court of a justice of the peace, defendant appeals.

Argued before DWIGHT, P. J., and MACOMBER, J.

*Albert H. Harris,* for appellant. *E. B. Fenner,* for respondent.

MACOMBER, J. On the 11th day of July, 1889, one of the plaintiff's team of horses, while passing over the defendant's railway tracks on what is called a "farm crossing," in the town of Riga, drawing a reaper into a four-acre field of wheat belonging to one Mr. Richmond, caught the toe cork of his forward shoe under the head of a spike near the outermost southern rail, resulting in fatal injuries. The charge against the defendant is that it failed to maintain this farm crossing in a proper state of repair, and that such failure was the cause of the injury to the plaintiff's horse. Mr. Richmond's farm lies on the south-east angle of two highways, a portion of the farm being

within the village of Churchville. The farm crossing, which had theretofore been commonly used for reaching this piece of four acres, was from a highway running east and west. A stream known as "Black Creek" runs at a distance of about 20 rods easterly from the north and south highway. This creek, though fordable in the summer time, manifestly presents such an obstacle to the approach to the four-acre field from the Richmond farm buildings as that a team of horses, with a reaper, could not safely cross it. Hence it was that, in order to reach the wheat-field, it was necessary to pass along the east and west highway, and across the railroad lands, for this purpose. This farm crossing had been maintained by the railway company, at the time of the injuries to the plaintiff's horse, for 49 years. In the month of December, 1888, however, there happened a wreck of a passenger train at this point, which tore up the plank which had theretofore existed and been maintained by the company, resulting in an annihilation of the crossing. No steps were taken by the defendant to repair the crossing between that time and July, 1889, when the injuries to the plaintiff's horse were received. Mr. Richmond, the owner of the wheat-field, in order to get the reaper across the tracks and into the grain, laid planks loosely in the place of the former planks, placing them as carefully as he could without spiking. The driver of the team, a young man 16 or 17 years of age, well accustomed to the horses, and knowing the difficulties of getting over the place with such a cumbrous machine, left the driver's seat, and took the horses by their heads, and led them across. In this attempt he undoubtedly would have been successful, except for the presence of the spike, which had been raised somewhat from the tie, upon which the toe cork of the horse had caught, and in bending forward his ankle pressed against the rail, from which he could not be extricated until he had suffered an injury which disqualified him for further use. The learned counsel for the appellant has made an ingenious argument to the effect that the company was not chargeable with knowledge of the dangerous condition of the spike; but, in answer to that argument, it may be said that, if the company had maintained a proper planking for this crossing, the accident would not have happened. The question is presented in the case by the request made to the court to charge, and its refusal, to which exceptions were taken. Counsel asked the court to instruct the jury that the defendant was not to be charged with negligence unless the evidence showed that it knew, or ought to have known, of the displacement of the spike. This was charged. The court was then asked to charge that there was no evidence on which the jury could find that the defendant knew, or ought to have known, that the spike was out of place. This was refused, and exception taken. The defendant's counsel further asked the court to charge that knowledge that the crossing was defective would not render the defendant responsible, unless it knew, or ought to have known, it was defective in the particular that caused the accident; also that there was no evidence on which the jury would be warranted in finding that the defendant was negligent in respect to the crossing. This was also declined, and exception taken. Counsel also excepted to that portion of the charge of the court which instructed the jury that it was the duty of the defendant to maintain this crossing. These exceptions bring up the only questions in the case, and they may be very briefly disposed of under the facts as they appear. In the absence of evidence justifying the discontinuance of this farm crossing, it is apparent that the maintenance thereof by the defendant for the period of 49 years is conclusive upon its contention that it was not obliged by law to maintain it. The company itself had done no act to discontinue the crossing. It was torn up by the railway accident, and the company failed thereafter to perform its duty, which it had for nearly 50 years undertaken to perform, in behalf of the owner of the four-acre piece of ground. In respect to the claim that this defect could not have been detected by inspection, it may well be an-

swered that the jury was justified in finding that the condition of the spike was the result of the tearing away of the plank in the railway accident; and that the company being necessarily charged, under the evidence, with the general destruction of the crossing, it became the duty of its inspectors to ascertain whether there were any dangerous conditions left which might result in accidents of the kind described in this case. The argument of the learned counsel goes to the extent of claiming that this particular accident might have happened even though the company had maintained the farm crossing in its original safe condition. But we are not called upon to indulge in speculations of that character. It was the duty of the company to restore this crossing to a safe condition within a reasonable time after the accident. Not having done so, and the owner of the land having taken such reasonable means of making a crossing of necessity, it was not imprudent for the plaintiff to take his reaper across the tracks, and he cannot be charged with the consequences of the dangerous condition of this spike, in the absence of evidence that he knew of its existence. On the other hand, the defendant, having knowledge of the breaking away of the planking, was charged with the duty of seeing to it that the spikes were not left in such a condition as might interfere with the prudent crossing of the same for necessary farming purposes. Judgment and order appealed from should be affirmed, with costs.